Jori Quinlan
Britton J. Fraser
HALL BOOTH SMITH, P.C.
101 E. Front St., Ste. 402
Missoula, MT 59802
(406) 317-0070
jquinlan@hallboothsmith.com
bfraser@hallboothsmith.com



*Attorneys for Charles B. Black, M.D., individually,
as Medical Director, former CEO and Board
Member of the Center for Asbestos-Related
Disease (CARD); Karen Lee Morrissette, M.D.,
Tracy McNew, L.P.N.; Michelle Boltz, A.P.R.N.; and
Miles Miller, P.A.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| BNSF RAILWAY COMPANY, on behalf of THE UNTIED STATES OF AMERICA<br><br>*Plaintiff/Judgment Creditor,*<br><br>v.<br><br>THE CENTER FOR ASBESTOS RELATED DISEASE, INC.,<br><br>*Defendant/Judgment Debtor.* | Cause No.: CV-25-67-KLD<br><br><br>**BRIEF IN SUPPORT OF MOTION TO INTERVENE** |

Pursuant to Federal Rule of Civil Procedure 24(a), Charles B. Black, M.D.

("Dr. Black"), individually and as Medical Director, former CEO, and Board

1

Member of the Center for Asbestos Related Disease ("CARD"), Karen Lee Morissette, M.D., Tracy McNew, L.P.N., Michelle Boltz, A.P.R.N., and Miles Miller, P.A. (collectively "Defendant-Intervenors"), by and through counsel Hall Booth Smith, P.C., have moved the Court to intervene in this matter and submit this Brief in Support of Motion to Intervene to File Complaint and Application for Preliminary Injunction. Defendant-Intervenors are current and former CARD employees named in their individual capacities in currently pending medical malpractice claims. *See* First Amended Complaint filed in the Montana Nineteenth Judicial District Court, Cause No. DV-27-2024-0000187-PM, *Thomas Steiger, individually and as Personal Representative of the Estate of Terry L. Steiger; Thomas J. Matilas, individually v. Charles Brad Black, M.D., et. al.*; (Ex. 7 below).

Good cause exists to allow Defendant-Intervenors to intervene in this matter for the following reasons:

## BACKGROUND

### I.      Prior Litigation

The Center for Asbestos Related Disease, Inc. ("CARD") is a clinic that provides screenings, monitoring, and treatment for asbestos-related diseases in Lincoln County, Montana. CARD was formed in response to the rampant asbestos exposure Libby residents suffered due to the mining and transportation of asbestos-contaminated vermiculite by companies such as W.R. Grace and Company and the

BNSF Railway Company ("BNSF"). *See, e.g., BNSF Ry. Co. v. Eddy*, 2020 MT 59, 399 Mont. 180, 459 P.3d 857 (BNSF strictly liable for certain asbestos exposures and cannot refute causation by blaming W. R. Grace's conduct); *National Indem. Co. v. State*, 2021 MT 300, 406 Mont. 288, 499 P.3d 516.

On March 6, 2019, BNSF filed a *pro qui tam* action against CARD under the federal False Claims Act, 31 U.S.C. §§ 3729–33. *See* Federal Docket No. CV-19-00040-M-DLC (hereinafter "FCA Action"). In the FCA Action, BNSF essentially alleged that CARD had been submitting thousands of false claims to Medicare, the Social Security Administration, or other government entities for the purpose of enrolling its patients for certain benefits available to individuals diagnosed with asbestos-related disease from exposure to asbestos in the Libby, Montana region. *See generally* Ex. 1: 2d Am. Compl. & Jury Demand, FCA Action, No. CV-19-40-M-DLC, Feb. 18, 2021 (Doc. 22). After extensive litigation, the matter proceeded to a jury trial wherein CARD was found liable for 337 violations of the False Claims Act. However, because there was no special verdict form, no one knows the basis for the jury's findings. Counsel for BNSF during litigation and at trial included, among others, W. Adam Duerk ("Mr. Duerk"), current counsel for Plaintiffs in the pending medical malpractice litigation against the Defendant-Intervenors. *See* Ex. 1 at 1; Ex. 2: Tr. Jury Tr., Vol. 1 of 12, at 2, FCA Action, June 12, 2024.

The litigation and verdict associated with the FCA Action resulted in CARD filing for bankruptcy. *See generally* U.S. Bankr. Ct. Dist. Mont., No. 23-BK-90135-BPH (hereinafter "Bankruptcy Case"). The parties to the Bankruptcy Case, including BNSF, CARD, and the U.S. Department of Health & Human Services ("United States"), eventually entered into a Stipulation. Ex. 3: Stip., Bankr. Case, Mar. 15, 2024 (Doc. 85). In the Stipulation, the parties, including BNSF, agreed that "all, or substantially all, of [CARD's] income and real and personal property is held in trust for the benefit of the United States to the extent that it was purchased and maintained with federal grant money." Ex. 3 at 2. In other words, CARD's purported property, including its building, medical equipment, administrative equipment, etc. . . . is, in reality, the property of the United States government which CARD holds in trust for the purposes of facilitating its asbestos-related medical services pursuant to federal grants. The parties—including BNSF—additionally agreed in the Stipulation that federal grant money and property held in trust by CARD "cannot be used to pay the FCA [Action] Judgment and/or related costs and expenses, including attorney fees and costs[,]" nor can federal grant money be used to pay fees and costs associated with the Bankruptcy Case. Ex. 3 at 3. The Court approved the Stipulation, and based on the Stipulation, dismissed the Bankruptcy Case. Ex. 4: Order, Bankr. Case, Apr. 8, 2024 (Doc. 92). While a bankruptcy would typically result in a discharge of claims

4

against the debtor, the dismissal based on the Stipulation did not result in a discharge of claims.

At the time BNSF signed the Stipulation, Mr. Duerk was still counsel of record for BNSF in the FCA Action, and a member of his firm at the time, Knight Nicastro, signed the Stipulation on behalf of BNSF. *See* Ex. 5: Not. Withdrawal W. Adam Duerk, FCA Action, July 3, 2024 (Doc. 268); Ex. 3 at 4 (signature of Chad M. Knight dated 03/14/2024).

While all of this was occurring, and while still counsel of record for BNSF, on October 24, 2023, Mr. Duerk as counsel for Plaintiffs Thomas Steiger and the Estate of Terry Steiger, began the process necessary to file a malpractice claim against Dr. Black in Montana District Court by submitting an Application for Review of Claim to the Montana Medical Legal Panel. *See* Ex. 6: Redacted Am. Appl. Review Claim, Oct. 24, 2023. (Mr. Duerk's new firm was not formed until January 29, 2024. Mont. Sect. of State, https://biz.sosmt.gov/search/business (*search* Missoula Lawyers, PLLC, and assumed business name McFarland, Duerk, and Molloy.)

A Complaint and Jury Demand in that matter was then filed in the Nineteenth Judicial District Court, Lincoln County on October 10, 2024, and subsequently amended on February 4, 2025. *See* Ex. 7: 1st Am. Compl. & Jury Demand, *Steiger/Matilas v. Charles Black, M.D., et al.*, No. DV-27-2024-0000187-PM, Feb.

5

4, 2025 (Doc. 7) ("Malpractice Action"). Plaintiffs named CARD[1] itself and the Intervenor-Defendants (CARD physicians, midlevel providers, and administrators), among others, as Defendants. Plaintiffs' allegations in the malpractice action against Defendant-Intervenors largely parrot the allegations asserted in BNSF's FCA action against CARD: in short, the Complaint alleges CARD and Defendant-Intervenors committed medical malpractice and other torts by misdiagnosing Plaintiffs with asbestos-related disease, leading Plaintiffs to experience distress and to fail to treat other medical issues. *See generally* Ex. 7 at ¶¶ 284–354. The Complaint further threatens that this suit is "the first of many" similar suits that will be brought. Ex. 7 at ¶ 219.

## II.   BNSF's Seizure of CARD and Materials Relevant to Defendant-Intervenors' Defense of Malpractice Action

On February 12, 2025, the Lincoln County Clerk of Court signed a Writ of Execution filed by BNSF seeking to collect on the Judgment entered against CARD in the FCA Action. The Writ of Execution was removed to this Court. (*See* Doc. 1-2 at 1). The Writ does not mention the Stipulation at all. An Addendum to the Writ of Execution lists the "personal property" of CARD which BNSF intends to seize. *See* Addendum (Doc. 1-2 at 4). This includes, but is not limited to computers,

---

[1] While the undersigned represents CARD as an entity along with Intervenor-Defendants in the Montana District Court Malpractice Action, the undersigned does not represent CARD as an entity in this matter.

servers, and associated I.T. equipment, desks, chairs, and other office furniture and appliances, medical diagnostic machines (including the sole Pulmonary Function Test (PFT) machine in Lincoln County), medical freezers (which, upon information and belief, contain medical samples from CARD patients), and the building and real property that CARD is located in and on—nearly all of the property CARD possesses. (Doc. 1-2 at 4–7).

On May 7, 2025, the Lincoln County Sheriff's Office ("Sheriff's Office") served and executed the Writ of Execution upon CARD, locking CARD employees out of the clinic. Sheriff's Office Press Release, May 7, 2025 (Doc. 1-2 at 8–9). The press release, which is apparently based solely upon information contained in the Writ of Execution, does not mention the Stipulation, nor does it appear that the Sheriff's Office was made aware of the Stipulation. Therefore, it appears the Sheriff's Office was unaware that the property it seized pursuant to that Writ is—as BNSF stipulated to in Court—predominantly, if not exclusively, U.S. Government property that CARD holds and uses in trust, not the "personal property" of CARD itself. Thus, as of the day of filing, CARD itself is effectively shut down and unable to render any medical services or provide the services required under its grant with the Agency for Toxic Substances and Disease Registry.

Relevant to Defendant-Intervenors, BNSF is currently in possession of CARD's computers, administrative files, medical records, and other materials which

7

may contain information fundamentally necessary for and relevant to Defendants-Intervenors' defenses in the pending malpractice action. This includes protected attorney-client communications, attorney work product, and patient health information relative to the malpractice action, the FCA Action, Bankruptcy Case, and other previous and pending litigation Defendant-Intervenors are involved in.

## APPLICABLE LAW

Under Federal Rule of Civil Procedure 24(a)(2), anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest" has a right to intervene "unless existing parties adequately represent that interest." The elements for intervention by right under Rule 24(a)(2) are:

> (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the transaction; (3) the applicant must be so situated that disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties in the lawsuit.

*Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996), *as am. on denial of reh'g (May 30, 1996)* (citing *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995)).

## ARGUMENT

**I.  Defendant-Intervenors are Entitled to Intervene under Federal Rule of Civil Procedure 24(a)(2)**

Defendant-Intervenors are entitled to intervene in this matter under Federal Rule of Civil Procedure. 24(a)(2) for the following reasons.

### A.  Defendant-Intervenors' Motion is Timely

Defendant-Intervenors have timely made their motion. The Writ of Execution was executed on May 7, 2025. (Doc. 1-2 at 9.) On May 9, 2025, the United States moved to quash the Writ of Execution in the Lincoln County District Court. (*See* Doc. 1-3). That same day the United States filed its Notice of Removal in this action. (Doc. 1). Defendant-Intervenors are filing this motion eight days after the Writ was executed, and six days after this matter commenced. Given the facts of the case, this constitutes a timely-made motion.

### B.  Defendant-Intervenors have a Significantly Protectable Interest in the Property at Issue in this Matter

Defendant-Intervenors' interest in this matter stems from BNSF's attempt to execute its Judgment against CARD's purported property despite the clear wording of the Stipulation and the effect the same has on Defendant-Intervenors' ability to defend themselves in the Malpractice Action. As discussed above, not only is CARD now effectively shut down, but Defendant-Intervenors do not have access to patient records, administrative records, and other materials fundamentally necessary to

9

defend themselves against malpractice claims brought by Plaintiffs represented by BNSF's former counsel. Even more concerning is that BNSF has seized computers, servers, and other I.T. equipment containing privileged and confidential attorney-client communications and work product. The ramifications of any eventual interpretation of the Stipulation by this Court, or of any other action taken by the Court regarding the property contemplated by the Stipulation is, therefore, of paramount importance to Defendant-Intervenors.

The Court has the authority to enter injunctions, restraining orders, or other orders on the property at issue which could protect or hinder, to one degree or another, Defendant-Intervenors' access to information necessary to defending themselves against the malpractice allegations levied against them. Defendant-Intervenors' interest is thus not solely in the final disposition of this matter, but an ongoing one which could be impacted at any stage of this litigation. For the same reasons, Defendant-Intervenors' interest in the property at issue here is an interest that is significantly protectable by the Court. *Northwest Forest Res. Council*, 82 F.3d at 836.

### C.    This Court's Disposition of this Matter May Impair and/or Impede Defendant-Intervenors' Ability to Protect its Interests

The effect that the disposition of this matter may have on Defendant-Intervenors' ability to protect their interest in defending themselves in litigation is

strikingly clear. The interim and ultimate fate of the property contemplated by the Stipulation will directly impact Defendant-Intervenors' ability to fully defend themselves against the pending malpractice claims. As discussed above, permitting the property at issue here to remain seized and in the possession of either the Sheriff's Office or BNSF at a bare minimum severely restricts their ability to access information necessary for the defense and puts the security of protected attorney-client communication and work product and patient information directly at risk.

But this potential impact also goes beyond Defendant-Intervenors' mere access to information necessary to their defenses. The ability to preserve this evidence is also at risk. The material seized by BNSF included servers, computers, and other I.T. equipment, hard copies of records and other physical files, as well as biological material kept in refrigerators for preservation. To one extent or another, these materials need resources, energy, and maintenance to remain active, and are at risk of destruction if not given the proper care. As an obvious example, biological samples kept in refrigerators must be kept at a certain temperature or risk being partially or totally destroyed. Even computer equipment, such as servers or hard drives, must not only be kept connected to power and internet services in order for the information on them to be retrievable, but must also be kept in environmentally appropriate locations to prevent excessive humidity, heat, cold, etc. from damaging them.

11

In light of the above, any action taken by the Court with respect to the property at issue here, including both interim and final dispositions, has a substantial likelihood of affecting Defendant-Intervenors' stated interest in the property to one extent or another. Given that Defendant-Intervenors' interest relates to their right to defend themselves in ongoing—and threatened future—litigation, intervention is necessary for Defendant-Intervenors to protect that interest. *Northwest Forest Res. Council*, 82 F.3d at 836.

**D.    No other parties can adequately protect Defendant-Intervenors' interests in this matter**

Finally, Defendant-Intervenors' interests are not adequately represented by the existing parties to this action. Defendant-Intervenors' interests in the subject of this action are personal to them and their ability to fully defend themselves and otherwise litigate the malpractice claims filed against them. BNSF is blatantly opposed to this interest. Indeed, due to BNSF being strictly liable for asbestos-related disease stemming from exposure to Libby asbestos from the railway, it is difficult not to suspect that it is in BNSF's interest[2] to have as few people as possible diagnosed with asbestos-related diseases and to discredit CARD and Defendant-Intervenors.

---

[2] The one case that has gone to trial under this theory to date, which is up on appeal, resulted in an $8 million verdict against BNSF. *Wells v. BNSF Railway Co.*, CV 21-97-GF-BMM (D. Mont. 2024).

The United States, while not necessarily opposed to Defendant-Intervenors' interests, does not share them and has no incentive to protect them. While the United States has an ownership interest in CARD's property, its interest relative to CARD stems from CARD's position as a trustee of that property on behalf of the U.S. government and as a grantee. This is a fundamentally different interest than Defendant-Intervenors', which is access to and use of the property covered by the Stipulation to defend itself against malpractice allegations and ensure that protected and privileged attorney-client communication, work product, and protected patient information remains secure. Further, there is a substantial risk that exculpatory evidence may be destroyed or otherwise spoliated absent proper maintenance and/or protection that neither BNSF nor the United States are in a position to, or have an in interest in, performing.

Lastly, while CARD itself is a party to the malpractice action, it is one of many joint Defendants along with Defendant-Intervenors. In this action, however, CARD's interest as a distinct entity is in enforcing the Stipulation as it relates to the Bankruptcy Case, and actions it takes in this matter are rightfully taken to facilitate that end. This is an interest distinct from Defendant-Intervenors' personal interests in both protecting and accessing the information relevant to defending themselves from the pending malpractice allegations, protecting attorney-client communications and attorney work product, and ensuring that protected patient

information relevant to their defenses (and not to mention relevant to the care of their actual patients) is properly maintained. *Northwest Forest Res. Council*, 82 F.3d at 836. Moreover, as current and former employees, their personal information and employee files are subject to the writ of execution.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant-Intervenors' Motion to Intervene.

Respectfully submitted this 15th day of May 2025.

HALL BOOTH SMITH, P.C.
*Attorneys for Charles B. Black, M.D., individually, as Medical Director, former CEO and Board Member of the Center for Asbestos-Related Disease (CARD); Karen Lee Morrissette, M.D., Tracy McNew, L.P.N.; Michelle Boltz, A.P.R.N.; and Miles Miller, P.A.*

_____
Jori Quinlan

14

## CERTIFICATE OF COMPLIANCE

Pursuant to L. R. 7.1(d)(2)(E), I certify that this BRIEF IN SUPPORT OF MOTION TO INTERVENE is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Word for Microsoft 365 MSO, is 2,834 words long, excluding Caption, Table of Contents, Table of Authorities, Exhibit Index, and Certificate of Compliance.

DATED this 15th day of May 2025.

HALL BOOTH SMITH, P.C.
*Attorneys for Charles B. Black, M.D., individually, as Medical Director, former CEO and Board Member of the Center for Asbestos-Related Disease (CARD); Karen Lee Morrissette, M.D., Tracy McNew, L.P.N.; Michelle Boltz, A.P.R.N.; and Miles Miller, P.A*

_____
Jori Quinlan

## CERTIFICATE OF SERVICE

I certify that on the 15th day of May 2025, I served a true and accurate copy of this BRIEF IN SUPPORT OF MOTION TO INTERVENE on the following counsel of record and/or other persons as indicated below:

| Recipient | Method of Service |
|---|---|
| | Hand Delivery |
| 1-2 | First-Class Mail |
| | Overnight Delivery Service |
| | E-Mail |

1.  Chad M. Knight
    Anthony M. Nicastro
    Cole Anderson
    Knight Nicastro Mackay, LLC
    204 W. 10th Street
    Kansas City, MO 64105
    knight@knightnicastro.com
    nicastro@knightnicastro.com
    anderson@knightnicastro.com

    *Attorneys for Plaintiff BNSF*

2.  James A. Patten
    Patten Peterman Bekkedahl
      & Green, PLLC
    P.O. Box 1239
    Billings, MT 59103
    apatten@ppbglaw.com

    *Attorneys for Defendant CARD*

Lisa Driscoll
Lisa Driscoll

16