James A. Patten
Justin M. Oliveira
PATTEN, PETERMAN, BEKKEDAHL,
& GREEN, P.L.L.C.
2817 2nd Avenue North, Suite 300
Billings, MT 59101
(406) 780-3597
apatten@ppbglaw.com
joliveira@ppbglaw.com

*Attorney for The Center for Asbestos
Related Disease, Inc.*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| BNSF RAILWAY COMPANY, on behalf of THE UNITED STATES OF AMERICA, | Case No. CV-25-67-M-DLC |
| *Plaintiff/Judgment Creditor*, vs. | |
| THE CENTER FOR ASBESTOS RELATED DISEASE, INC. | **REQUEST TO TAKE JUDICIAL NOTICE** |
| *Defendant/Judgment Debtor.* | |

THE CENTER FOR ASBESTOS RELATED DISEASE, INC. ("CARD"),

Defendant and judgment debtor above named, by and through counsel, James A.

Patten, moves this Court, pursuant to Federal Rule of Evidence 201, to take judicial

notice of the pleadings identified below from the Center for Asbestos Related

1

Disease bankruptcy case, U.S. Bankruptcy Court for the District of Montana, case no. 9:23-bk-90135:

CARD Exhibit 1 – U.S.A. Motion to Dismiss;

CARD Exhibit 2 – Stipulation of the Subchapter V Trustee, the U.S.A., BNSF; Railway Company, and CARD to Dismiss;

CARD Exhibit 3 – CARD Motion to Dismiss;

CARD Exhibit 4 – Order dismissing case.

Rule 201, F.R.E. provides for judicial notice of adjudicative facts that are not subject to reasonable dispute because such facts are: (i) "generally known within the trial court's territorial jurisdiction"; or (ii) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

The pleadings, CARD Exhibits 1, 2, 3 and 4, are generally known within this Court's territorial jurisdiction because the pleadings of the Bankruptcy Court are maintained by the Clerk of this Court. Similarly, CARD Exhibits 1, 2, 3 and 4 can be readily determined from this Clerk of Court's office whose accuracy cannot reasonably be questioned.

CARD is not requesting the Court take judicial notice of anything other than the stipulated dismissal of the CARD bankruptcy case and the facts upon which the stipulated dismissal was based as reflected in CARD Exhibits 1, 2, 3, and 4.

Copies of Exhibit 1, 2, 3, and 4 are attached hereto.

Wherefore the foregoing, the Center for Asbestos Related Disease respectfully requests this Court take judicial notice of the attached CARD Exhibits 1, 2, 3 and 4.

Dated this 9th day of June, 2025.

PATTEN, PETERMAN, BEKKEDAHL,
& GREEN, P.L.L.C.

*/s/* J A Patten
James A. Patten
*Attorney for The Center for Asbestos
Related Disease, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing was duly served upon the following persons on the 9th day of June, 2025, as follows:

<u>Via E-Service</u>
Chad M. Knight
Anthony M. Nicastro
Cole Anderson
Knight Nicastro Mackay, LLC
304 W. 10th Street
Kansas City, Missouri 64105

<u>Via E-Service</u>
Mark Steger Smith
Lynsey Ross
Assistant U.S. Attorneys
U.S. Attorney's Office
2601 2nd Ave. N, Ste. 3200
Billings, MT 59101

**PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC**

By:  /s/JA Patten
        James A. Patten
        *Attorney for The Center of Asbestos*
        *Related Disease, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to L. R. 7.1(d)(2)(E), I certify that this REQUEST TO TAKE JUDICIAL NOTICE OF EXHIBITS is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count, calculated by Microsoft Word for Microsoft 365 MSO, is **278** words long, excluding Caption, Table of Contents, Table of Authorities, Exhibit Index, and Certificate of Compliance.

DATED this 9th day of June 2025.

PATTEN, PETERMAN, BEKKEDAHL,
& GREEN, P.L.L.C.

*/s/* J A  Patten
James A. Patten
*Attorney for The Center for Asbestos*
*Related Disease, Inc.*

Lynsey Ross (Bar No. 63788124)
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Ave. North, Ste 3200
Billings, MT 59101
(406) 247-4632
lynsey.ross@usdoj.gov

*Attorneys for United States of America*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re: | Case No. 9:23-bk-90135-BPH |
| **CENTER FOR ASBESTOS RELATED DISEASE, INC.** | (Subchapter V) |
| Debtor. | |

## MOTION TO DISMISS BANKRUPTCY FOR CAUSE PURSUANT
## TO 11 U.S.C. § 1112(b) AND BRIEF IN SUPPORT

Pursuant to 11 U.S.C. § 1112(b), Fed. R. Bankr. P. 1017, and Mont. LBR 1017-1(b), the

United States of America, on behalf of its agency the Department of Health and Human Services

Center (DHHS), moves the Court to dismiss this Subchapter V bankruptcy for cause because there

is no prospect of a confirmable plan, continuing diminution of the bankruptcy estate, and because

the bankruptcy was filed in bad faith. DHHS waives the requirement of 11 U.S.C. § 1112(b)(3)

that a hearing on this Motion be held within 30 days and consents to a hearing being set at the

discretion of the Court. In support, the United States respectfully represents as follows:

### BACKGROUND

While Debtor filed its bankruptcy just three months ago on August 7, 2023, the Debtor's

history and prior litigation are extensive and directly bear upon these bankruptcy proceedings. This

bankruptcy involves three main creditors or parties in interest:

Page **1** of **14**

Exhibit 1 001

<u>BNSF:</u> BNSF Railway Company, Inc. was the plaintiff-relator in a *qui tam* action alleging violations of the False Claims Act against Debtor filed March 6, 2019, in the U.S. District Court for the District of Montana under Case No. 9:19-cv-40-DLC ("FCA Case"). The United States declined to intervene in the FCA case. (FCA Case Doc. 23.) As the relator, BNSF holds a partial assignment of the judgment granted in favor of the United States.

<u>United States Department of Justice:</u> The USDOJ collects and enforces indebtedness to the United States, specifically including judgments entered pursuant to the False Claims Act. USDOJ is the party in interest entitled to collect, receive, and further distribute the judgment against Debtor.

<u>United States Agency for Toxic Substances and Disease Registry (Department of Health and Human Services):</u> This agency is an independent operating agency within the United States Department of Health and Human Services. This agency is the principal federal public health agency involved with hazardous waste issues and the protection of communities from the harmful effects related to exposure to hazardous substances. Among other goals and functions, this agency administers grants for the diagnosis and treatment of asbestosis, pleural thickening, and pleural plaques. The Agency for Toxic Substances and Disease Registry will be referred to as the "Granting Agency."

The primary debt at issue in Debtor's bankruptcy is a judgment entered against Debtor in the FCA Case. On June 28, 2023, a jury entered its verdict finding 337 violations of the False Claims Act by Debtor and awarding damages of $1,081,265.00 to the United States. (FCA Case Doc. 216.) On July 18, 2023, the U.S. District Court found that the jury award must be trebled and entered an amended judgment with a total damage award of $3,243,795 and a penalty of $2,582,228, for a total judgment of $5,826,023 ("FCA Judgment"). (FCA Case Doc. 233.)

The U.S. District Court ordered that BNSF, as the relator, is entitled to 25% of the judgment proceeds. *Id.* A judgment under the False Claims Act is awarded in favor of the United States and against the defendant. A relator in a delegated case may receive 25-30% of the proceeds, to be paid out of the proceeds. 31 U.S.C. § 3730(d)(2). A *qui tam* relator is a partial assignee of the United States' claim. *See Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773-74 (2000) (relator is "in effect, suing as a partial assignee of the United States."). Any right to collect held by BNSF is a matter of the United States sharing its judgment with BNSF rather than

Exhibit 1 002

a distinct judgment in favor of BNSF and against Debtor. Debtor appealed the FCA Judgment on July 20, 2023. (FCA Case Doc. 234.) Debtor did not move the U.S. District Court for a stay of the judgment pending its appeal.

Every five years, the Granting Agency awards a grant for which Debtor is and has previously been eligible. The Granting Agency has awarded federal money to Debtor through this granting process for the past three grant cycles. All money distributed by the Granting Agency to grantees pursuant to its statutory and regulatory authority will be referred to as "Grant Money". Because Grant Money is public money paid by the taxpayers, its distribution, use, and oversight are highly regulated both as to the Granting Agency and as to Debtor. An overview of the Granting Agency's award of grants and the restrictions on Grant Money is attached as Exhibit A, Declaration of Rhonda Latimer.

Not only is Grant Money highly regulated and intensely controlled, it is not property of the estate as defined by 11 U.S.C. § 541(a)(1). *Cross Check Services, LLC v. Dutra (In re Nev. Fire Safe Council)*, No. NV-16-1304-LTiF, 2017 WL 6553395, *6 (9th Cir. B.A.P. Dec. 21, 2017) (affirming bankruptcy court finding that federal grant money not property of the estate). "In general, where a governmental agency awards grant funds to a private nonprofit community service organization but maintains control over how those funds are spent, the nonprofit organization acts merely as a conduit and does not obtain any interest in the funds such that the funds become property of the estate if the organization files a bankruptcy case." *Id.* As was the case in *Nevada Fire*, this case has no dispute regarding the terms of the Grant Money or the Granting Agency's control over the same.[1]

---

1 See Debtor's request to pay prepetition debt with Grant Money at ECF No. 28

Other than Grant Money, Debtor claims to earn income from other sources, though the amount, frequency, and reliability of that income is not specified. All money received or claimed by Debtor that is not Grant Money will be referred to as "Other Income."

## LEGAL STANDARDS

The Court has discretion to convert or dismiss a chapter 11 for cause under 11 U.S.C. § 1112(b). *Baroni v. Seror (In re Baroni)*, 36 F.4th 958, 966 (9th Cir. 2022), *cert. denied* 143 S. Ct. 424 (2022); *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 515 (8th Cir. 2004). The Court must dismiss or convert a Chapter 11 bankruptcy if the movant established cause unless the Court determines that appointment of a trustee or examiner is in the best interests of all the creditors and the estate. 11 U.S.C. § 1112(b)(1). Section 1112(b)(4) enumerates several types of cause but those factors are not exclusive and the Court is not limited to the enumerated factors. 11 U.S.C. § 102(3) (specifying that "includes" is "not limiting"); *see also, e.g., Pioneer Liq. Corp. v. U.S. Trustee (In re Consolidated Pioneer Mortg. Entities)*, 248 B.R. 368, 377 (9th Cir. B.A.P. 2000)*, aff'd*, 264 F.3d. 803 (9th Cir. 2001) (enumerated causes not exhaustive and court can consider other factors and use its equitable powers for appropriate result in individual cases) (quoting H.R. No. 95-595, 95th Cong., 1st Sess. 405-06 (1977)). One example of cause is all that is needed to affirm an order dismissing a case under section 1112(b). *See Hoover v. Harrington (In re Hoover)*, 828 F.3d 5, 9 (1st Cir. 2016).

Once the movant establishes cause, the burden shifts to the debtor to establish, sufficient for the Court to find, unusual circumstances that establish dismissal or conversion is <u>not</u> in the best interests of the creditors and the estate. 11 U.S.C. § 1112(b)(2). The debtor must also establish a reasonable likelihood that it can timely confirm a plan and that any reasonably justified cause can be cured within a reasonable period. *Id.* "Circumstances inherently present in bankruptcy, such as

disputes regarding the validity and amount of a creditor's claim, are not 'unusual' for purposes of Section 1112(b)(2) [and] there must be something beyond the inherent financial pressures and adversarial differences involved in a bankruptcy case to establish that the purposes of Chapter 11 or the creditors' interests are better served by continuing under the chapter." *Baroni v. Seror (In re Baroni)*, 36 F.4th 958, 969 (9th Cir. 2022). If the Court finds cause but does not find and specifically identify unusual circumstances, it must order dismissal or conversion, whichever is in the best interest of the creditors and the estate.

## ARGUMENT

### A. Debtor cannot present a confirmable plan of reorganization.

The inability to confirm a feasible plan of reorganization is grounds for dismissal. *Toibb v. Radloff*, 501 U.S. 157, 165 (1991) (bankruptcy code gives courts substantial discretion to dismiss where a debtor files an untenable plan of reorganization). A debtor only obtains consensual confirmation if the debtor's Subchapter V plan satisfies all requirements of § 1129(a) except for (a)(15). 11 U.S.C. § 1129(a). If the debtor cannot achieve consensual confirmation, the court may order nonconsensual confirmation if the proposed plan satisfies all requirements of § 1129(a) except paragraphs (8), (10), and (15); does not discriminate unfairly; and is fair and equitable to the unaccepting impaired classes. 11 U.S.C. § 1192(b). DHHS's objection to confirmation of the proposed plan is filed contemporaneously and those arguments are incorporated here by reference.

Briefly, because the Grant Money is not property of the Estate and its use is highly restricted by the Granting Agency, Debtor has insufficient funds to fund a plan. Debtor's schedules and proposed plan do not adequately trace the existing Grant Money and Other Income or provide for sufficient future Other Income to fund a plan, such that the Granting Agency would not object to any proposed plan. DHHS contends that its objections to confirmation are incurable and the

Court should dismiss the case without the possibility of a confirmable plan. *Toibb*, 501 U.S. at 165. Therefore, the Court should dismiss the case for cause.

**B. The estate has substantial and continuing loss or diminution of the estate with no reasonable likelihood of rehabilitation.**

Cause for dismissal includes when there is both (1) a substantial or continuing loss to or diminution of the estate, and (2) no reasonable likelihood of rehabilitation. 11 U.S.C. § 11123(b)(4)(A); *Hassen Imports P'ship v. City of West Covina (In re Hassen Imports P'ship)*. No. BAP CC-13-1019-KIPAD, 2013 WL 4428508 (Bankr. App. 9th Cir. Aug. 19, 2013). Both prongs are present here. Because the Grant Money is not property of the Estate and its use is highly restricted by the Granting Agency, authorized expenses paid with Grant Money must be excluded in considering the value of the Estate. Debtor's projected cash flow (ECF No. 43-3) demonstrates its current and future inability to fund a plan through funds other than the Grant Money. The projected income and expenses without carryover or depletion of savings is summarized and extrapolated as follows:

| | 9/2023 | 10/2023 | 11/2023 | 12/2023 | 1/2024 | 2/2024 | 3/2024 | 4/2024 | 5/2024 | 6/2024 | 7/2024 | 8/2024 | 9/2024 | 10/2024 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Grant Receipts | $ 247,732 | $ 251,252 | $ 254,252 | $ 249,252 | $ 249,252 | $ 249,252 | $ 242,832 | $ 251,252 | $ 254,252 | $ 248,252 | $ 249,252 | $ 249,252 | $ 242,732 | $ 251,252 | $ 3,490,068 |
| NonGrant Funding | $ 7,223 | $ 6,628 | $ 6,800 | $ 6,800 | $ 6,800 | $ 6,800 | $ 8,323 | $ 8,323 | $ 8,628 | $ 8,496 | $ 8,496 | $ 8,496 | $ 8,323 | $ 8,628 | $ 108,764 |
| Total In | $ 254,955 | $ 257,880 | $ 261,052 | $ 256,052 | $ 256,052 | $ 256,052 | $ 251,155 | $ 259,575 | $ 262,880 | $ 256,748 | $ 257,748 | $ 257,748 | $ 251,055 | $ 259,880 | $ 3,598,832 |
| | | | | | | | | | | | | | | | |
| Grant Costs | $ 158,467 | $ 251,250 | $ 254,250 | $ 249,250 | $ 249,250 | $ 249,250 | $ 251,250 | $ 251,250 | $ 254,250 | $ 249,250 | $ 249,250 | $ 249,250 | $ 251,250 | $ 251,250 | $ 3,418,717 |
| NonGrant Costs | $ 83,880 | $ 30,430 | $ 30,430 | $ 30,430 | $ 30,430 | $ 30,430 | $ 30,430 | $ 30,430 | $ 30,430 | $ 30,430 | $ 30,430 | $ 30,430 | $ 38,870 | $ 30,430 | $ 487,910 |
| Total Out | $ 242,347 | $ 281,680 | $ 284,680 | $ 279,680 | $ 279,680 | $ 279,680 | $ 281,680 | $ 281,680 | $ 284,680 | $ 279,680 | $ 279,680 | $ 279,680 | $ 290,120 | $ 281,680 | $ 3,906,627 |

Every month, Debtor's projected non-allowed expenses exceed projected NonGrant Funding (Other Income). The only way the Debtor can make plan payments and sustain the non-allowed expenses is to increase Other Income (which is not projected) or impermissibly use Grant Money.

1.   The bankruptcy estate is and will continue to diminish over the proposed plan term.

For the first prong, the loss can be substantial or continuing but does not need to be both to constitution cause. *Hassen Imports*, 2013 WL 4428508 at *13 (citing *In re Creekside Senior*

*Apartments, LP*, 489 B.R. 51, 61 (6th Cir. B.A.P. 2013). Loss or diminution is present when the debtor continues to incur losses or maintains a negative cash flow. *Id.* (citations omitted); *see also Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 515-16 (8th Cir. 2004) (negative cash flow alone sufficient to establish continuing loss or diminution).

Based on its own data, from September 2023 through October 2024 Debtor projects receiving $3,490,068 in Grant Money and $108,764 in other funds, but proposes to spend $487,910 on what appear to be non-grant-approved expenses—which is $379,146 <u>more</u> being spent on non-approved expenses than Debtor is receiving.

| | |
|---|---|
| Incoming NonGrant Funding to 10/24 | $  108,764 |
| Outing NonGrant Costs to 10/24 | $  487,910 |
| Difference NonGrant $ receved - NonGrant Costs | $  (379,146) |

Debtor attempts to cover some of this gap by taking $20,000 out of its savings for twelve months. Setting aside whether any money in savings is considered Grant Money (and thereby not available for unapproved expenses), this projection appears to deplete Debtor's savings by September 2024. Debtor does not project the use of savings in October 2024 despite projecting to pay $30,430 in non-approved expenses and receiving only $8,628 from non-grant sources. Even if this use of $20,000 from savings is allowable under the terms of the grant, the depletion of savings is insufficient to fund non-approved expenses through October 2024, let alone through the remainder of the plan term. As of October 2024, Debtor would still be spending almost $140,000 <u>more</u> in non-approved expenses than the projected Other Income.

| | | |
|---|---|---|
| Incoming NonGrant Funding to 10/24 | | $    108,764 |
| Projected Use of Savings | | $    240,000 |
| Total Incoming NonGrant Funding to 10/24 | | $  348,764.00 |
| Outgoing NonGrant Costs | $    487,910 | |
| Difference NonGrant $ receved - NonGrant Costs | | $    (139,146) |

"Under the interpretation of § 1112(b)(1) consistently used in bankruptcy courts, this negative cash flow situation alone is sufficient to establish 'continuing loss to or diminution of the

estate.'" *Loop Corp.*, 379 F.3d at 515-16. The exclusion of Grant Money from the estate renders the available bankruptcy estate minimal at the very outset. Any loss or diminution is substantial under the circumstances.

    2.    <u>Debtor cannot rehabilitate the loss and diminution.</u>

Rehabilitation must be reasonably likely to defeat a finding of cause. The Court must determine whether losses can be corrected and if Debtor is capable of rehabilitation, which usually depends on whether the debtor has or can supply a reasonably detailed plan. *In re Orange Cnty. Bail Bonds, Inc.*, 638 B.R. 137, 150 (Bankr. App. 9th Cir. 2022). A plan which is not feasible and contingent on some future act "with an uncertain and speculative outcome" support a finding that there is no reasonable likelihood of rehabilitation. *In re Am. Capital Equip., LLC*, 688 F.3d 145, 162 (3d Cir. 2012). Rehabilitation is different and more demanding than reorganization. *Hassen Imports*, 2013 WL 4428508 at *14 (citations omitted).

Debtor's cash flow projection appears to demonstrate that Debtor can make some plan payments because it shows a positive net cash flow for most months. However, this "cushion" relies upon the infusion (and subsequent depletion) of cash from Debtor's savings and the payment of non-allowed expenses which far exceed Other Income.

Further, Debtor cannot rely on a monthly carry-over to show it can meet expenses. This analysis is insufficient and inaccurate given the substantial nature of public funds at issue. While a typical commercial enterprise may be able to lump income and expenses together for a net carryover, the Grant Money must be specifically and precisely accounted for by Debtor. At no time is it proper to assume that the carryover balance is Grant Money or Other Income and each receipt and expense must be precisely identified to ensure Debtor remains a good steward of public money. Debtor fails to provide additional sources of Other Income to meet the projected non-grant

expenses, let alone make plan payments. Debtor does not have a reasonable likelihood of rehabilitation to cure the loss and diminution of the estate, therefore the Court should dismiss the bankruptcy for cause.

**C.    Debtor's bankruptcy case was not filed in good faith with an intent to reorganize.**

The lack of good faith has long been recognized as an appropriate ground for dismissal or conversion of a chapter 11 case. *In re Detienne Assocs. Ltd. P'ship*, 342 B.R. 318, 323-24 (Bankr. D. Mont. 2006) (citing cases). Objective factors and subjective intent can support a dismissal for bad faith. *Id; see also Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994) (affirming bad faith dismissal of a chapter 11). To determine whether a debtor filed a petition in good faith, the Ninth Circuit looks to an "amalgam of factors and not upon a specific fact" and whether the debtor is "attempting to effect a speedy, efficient reorganization on a feasible basis." *Marsch*, 36 F.3d at 828 (citing *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986)). The burden to prove good faith falls to the debtor. *Marshall*, 721 F.3d 1032, 1048 (9th Cir. 2013).

Some of the factors that may be considered indicative of a bad faith filing which are present here include: a lack of assets; little cash flow and available income to sustain plan payments; and few unsecured creditors with relatively small claims. *Detienne*, 342 B.R. at 324 (listing eight possible factors to consider in determining bad faith). Debtor owns little to no assets because all or substantially all of its real and personal property is held in trust for the United States. Its cash flow of Other Income is insufficient to pay its non-grant expenses and Grant Money is unavailable.

Other than the nondischargeable debt associated with the FCA Judgment, it appears some or all of Debtor's unsecured creditors can be paid with Grant Money. This leaves only the unsecured debt to Mr. Bechtold as a concern, which is a dispute between the Debtor and its counsel and is not sufficient cause to justify the costs and expenses of a bankruptcy. The inability to

propose a plan reasonably likely to be confirmed may support bad faith. *In re Marshall*, 403 B.R. 668, 693 (C.D.Cal. 2009). Each of these concerns are discussed in greater detail above so will not be duplicated here.

Debtor cannot show a reasonable bankruptcy purpose and an intent or need to reorganize. Debtor does not now have Other Income sufficient to pay the administrative expenses involved with a bankruptcy, including trustee fees, filing fees, and attorneys' fees and costs, and does not provide for future receipt of Other Income to make those payments. The Grant Money cannot be used for any such expenses. The FCA Judgment is nondischargeable because the judgment included a finding of fraud and the assessment of damages and penalties which are nondischargeable under several statutes, including 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), 523(a)(7), 1141(d)(6), 1192(2). The nondischargeable debt comprises the majority of Debtor's unsecured debt, the Grant Money cannot be used to make payments toward this debt, and Debtor cannot sufficiently provide for payment of the nondischargeable judgment.

Based on available information, it appears some or all of the unsecured creditors with balances owed under $30,000[2] may be paid outside the plan with Grant Money as allowable expenses approved by the Granting Agency. Allowable expenses help the Debtor fulfill its charitable and grant purpose and those creditors should not be denied full payment through the bankruptcy when they can be paid in full by Grant Money (not property of the estate). Any unsecured creditors who may be determined to be non-allowed expenses are small enough to be paid over time by Debtor's projected Other Income. Unsecured creditors with outstanding balances

---

2  In its proposed plan, Debtor created Class 1 for creditors <u>under</u> $15,000 and Class 2 for unsecured creditors <u>over</u> $15,000. DHHS uses the $30,000 figure because there is only one creditor in Class 2 unrelated to the FCA Judgment. The amount of that debt is over $420,000 less than the next-smallest creditor in Class 2 but only $14,000 more than the highest Class 1 creditor. Additionally, the debt appears more like those debts in Class 1 and may be an expense which could be paid in full or part by the Grant Money.

Page **10** of **14**

Exhibit 1 010

over $30,000 cannot be paid at the rates proposed by Debtor given the above concerns about available Other Money for payment.[3]

Other than the nondischargeable FCA judgment and the smaller payments which likely can be paid at least in part with Grant Money, the only other unsecured creditor is Debtor's counsel for the False Claims Act action, Mr. Bechtold. A chapter 11 is intended to reorganize a debtor's financial affairs, not resolve a two-party non-bankruptcy dispute. Any dispute as to Debtor's attorneys' fees and costs is truly a present or future two-party dispute between a debtor and a single creditor and cause to dismiss. *See, e.g., Oasis at Wild Horse Ranch, LLC v. Sholes (In re Oasis at Wild Horse Ranch, LLC)*, 2011 WL 4502102 (9th Cir. B.A.P. 2011) (affirming dismissal of chapter 11 bankruptcy that was really a two-party dispute); *In re Efron*, 529 B.R. 396, 406 (1st Cir. 2015) (cause to dismiss exists where there is a lack of true bankruptcy purpose in a case involving a two-party dispute between a single creditor and a debtor).

To safeguard the public fisc, the Granting Agency strictly monitors and controls allowable expenses. Given the strict oversight over Grant Money (which will not flow through the bankruptcy), any further oversight by the Subchapter V trustee, the USTP, and the Court will provide minimal benefit but will substantially increase time and costs for all. Allowing Debtor to continue in this bankruptcy duplicates work already being done by the Granting Agency and creates significantly more work, by requiring DHHS to closely monitor the bankruptcy case, thereby increasing costs to the taxpayers—ironically to protect taxpayer dollars and the integrity of the public fisc. Debtor cannot show a legitimate bankruptcy purpose is achieved if the Court denies this motion and the Court should dismiss this case for cause.

---

3 Additionally, the United States notes that relator's counsel in the FCA Action filed an application for attorneys' fees and costs, claiming that the False Claims Act requires payment of the relator's attorney fees. See 9:19-cv-40-DLC Doc. 240. The United States does not have an opinion as to whether such costs will or can be awarded, and how a successful bankruptcy could impact payment and assessment of the same. However, Debtor's schedules and proposed plan do not account for the additional $1,791,029.70 in fees and costs, which could further decrease Debtor's ability to pay.

**D.    Dismissal rather than conversion is in the best interests of all creditors and the estate.**

Once DHHS has established cause for dismissal, the Court has discretion to choose whether dismissal or conversion to Chapter 7 is in the best interests of the creditors and the estate. *Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 675 (9th Cir. B.A.P. 2006). The best interests of the creditors is determined on a case-by-case basis based on the totality of the circumstances. *In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1075 (9th Cir. 2002) (citations omitted); *see also In re Brotby*, 303 B.R. 177, 197 (9th Cir. B.A.P. 2003). The Court considers the collective best interest of all creditors, not the majority. *In re Red Door Lounge, Inc.*, 599 B.R. 728, 736 (Bankr. D. Mont. 2016); *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 613 (9th Cir. B.A.P. 2014) (court has independent obligation to consider all creditors and whether dismissal or conversion would be in the best interests of all creditors) (citations omitted).

Here, the Court cannot simply look to Debtor's liquidation analysis and see that creditors would receive payments upon conversion to a chapter 7. Debtor's liquidation analysis incorrectly accounts for its real and personal property held in trust for the United States:

- Without justification, Debtor claims that 65% of its real property is held in trust and uses 35% of the value as available for a hypothetical chapter 7. (ECF No. 43-1.) The Granting Agency disputes Debtor's representation. The Granting Agency has requested an accounting and tracing of all moneys used to purchase the real property as well as for continued maintenance, upkeep, taxes, and improvements. Absent Debtor's ability to prove that any Other Income was used to purchase or maintain the real property, the Granting Agency asserts that 100% of the real property is held in trust for the United States. 45 CFR § 75.318.

- Debtor also fails to account for its personal property being held in trust for the United States. 45 CFR § 75.323. The Granting Agency has requested an accounting and tracing of the money used to purchase and maintain the personal property. Absent Debtor's ability to prove that any Other Income was used to purchase or maintain the real property, the Granting Agency asserts that 100% of the personal property is held in trust for the United States. 45 CFR §§ 75.316, 75.319, 75.320, 75.321, 75.322, 75.323.

Exhibit 1 012

- Debtor fails to account for Grant Money which is held in its cash account and uses its total fair market value in its liquidation analysis. Debtor's use of the Grant Money is restricted to allowable expenses as determined by the Granting Agency and is not property of the Estate and, therefore, it cannot be considered in a liquidation analysis.

- The Grant Money in Debtor's accounts are not property of the estate and cannot be used for payment of trustee's fees in any chapter, administrative expenses, nor attorneys' fees and costs because such expenses are not part of the grant purpose. Debtor does not accurately distinguish and account for Grant Money in its liquidation analysis and improperly applies Grant Money to non-allowed expenses.

A hypothetical chapter 7 would result in minimal or no money for unsecured creditors, including insufficient income to pay trustee's fees and administrative costs. As discussed above, Debtor's largest debt, the FCA Judgment, is nondischargeable, and most of Debtor's other creditors can be paid with Grant Money. Creditors and the estate are in just as poor of a position in a hypothetical chapter 7 as they are in this Chapter 11. Creditors unrelated to the FCA Judgment are better off outside of bankruptcy because most or all of the claims can be paid in full rather than at a discount. Accordingly, dismissal is in the best interests of the creditor and the estate.

## CONCLUSION

Cause exists for dismissal of this Subchapter V because Debtor cannot achieve confirmation of a plan and the lack of assets and non-grant income pose significant problems with Debtor's ability to effectuate any plan that could be confirmed. Allowing the case to continue serves no bankruptcy purpose when considering the amounts and nature of the unsecured creditors and the substantial and detailed oversight over the Grant Money and its use. Requiring DHHS to monitor this bankruptcy to protect the public fisc will only increase costs and duplicate the existing supervision of Grant Money. No unusual circumstances are present to save this case from dismissal or conversion, rather the unusual circumstances here with involvement of the Grant Money support dismissal. Accordingly, DHHS respectfully requests the Court enter its order dismissing this case.

DATED: December 5, 2023.

**JESSE A. LASLOVICH**
UNITED STATES ATTORNEY

/s/ Lynsey Ross
Lynsey Ross
Assistant U.S. Attorney
Attorney for the United States DHHS

## NOTICE OF OPPORTUNITY TO RESPOND
## AND REQUEST A HEARING

If you object to the motion, you must file a written responsive pleading and request a hearing within twenty-one (21) days of the date of the motion. The responding party shall schedule the hearing on the motion at least twenty-one (21) days after the date of the response and request for hearing and shall include in the caption of the responsive pleading in bold and conspicuous print the date, time and location of the hearing by inserting in the caption the following:

**NOTICE OF HEARING**
**Date: _____**
**Time:_____**
**Location:_____**

If no objections are timely filed, the Court may grant the relief requested as a failure to respond by any entity shall be deemed an admission that the relief requested should be granted.

DATED: December 5, 2023.

**JESSE A. LASLOVICH**
UNITED STATES ATTORNEY

/s/ Lynsey Ross
Lynsey Ross
Assistant U.S. Attorney
Attorney for the United States DHHS

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify under penalty of perjury that on December 5, 2023, a copy of the foregoing was served by electronic means pursuant to LBR 9013-1(d)(2) on the parties noted in the Court's ECF transmission facilities and/or by mail on the following parties: None.

/s/ Lynsey Ross
Lynsey Ross
Assistant U.S. Attorney
Attorney for the United States DHHS

Exhibit 1 014

Lynsey Ross (Bar No. 63788124)
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Ave. North, Ste 3200
Billings, MT 59101
(406) 247-4632
lynsey.ross@usdoj.gov

*Attorneys for United States of America*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re: | Case No. 9:23-bk-90135-BPH |
| **CENTER FOR ASBESTOS RELATED DISEASE, INC.** | (Subchapter V) |
| Debtor. | |

## DECLARATION OF RHONDA LATIMER

I, Rhonda Latimer, in accordance with 28 U.S.C. § 1746, declare and state as follows:

1.    I am over the age of 18 and have personal knowledge of the information in this Declaration. I am employed as a Team Lead/Grants Management Officer in the Office of Grant Services, a component of the Office of Financial Resource Services, in the Office of the Chief Operating Officer at the Centers for Disease Control and Prevention ("CDC") in Atlanta, Georgia.   The CDC is part of the United States Department of Health and Human Services ("DHHS").   I have been employed in my current position since August 2021.   I have been employed by the CDC since 2009.

2.    The Agency for Toxic Substances and Disease Registry ("Agency") is an independent operating agency within DHHS. The Agency is concerned with hazardous waste issues and with the protection of communities from the harmful effects related to exposure to hazardous

Exhibit 1 015

substances. Among other functions, the Agency administers grants for the diagnosis and treatment of asbestosis, pleural thickening, and pleural plaques.

3.    The CDC performs many administrative functions for the Agency, including oversight of the awarding and administration of the Agency's grants.

4.    To date, the Agency has awarded three screening grants to the Center for Asbestos Related Disease, Inc. to provide nationwide medical screening, awareness, and education for those people with possible exposure to amphibole asbestos in Libby and Troy, Montana.    The statutory basis for the grants is 42 U.S.C. § 1397h (Program for early detection of certain medical conditions related to environmental health hazards).

5.    In making grant awards, the Agency publishes a Notice of Funding Opportunity, which triggers applications by various organizations that wish to receive a monetary grant award. All applicants must submit a detailed budget, and must agree to the terms of the grant in the Notice of Funding Opportunity. Each budget is incorporated into any payment award and strictly limits how each grantee may spend any grant money received. The Agency issues a Notice of Award to each successful applicant further detailing the terms of acceptance.

6.    Each grant cycle is awarded for the ensuing five-year period with annual budget approvals. This means that grantees submit applications to receive grant money every five years but submit proposed budgets for authorized expenses every year.

7.    Use of any grant award is limited to authorized expenses as detailed in terms of the grant in the Notice of Funding Opportunity, the Notice of Award, the grantee's application, and the grantee's approved budget. In addition to these grant-specific limitations, grant awards and grantees are subject to additional requirements.

8.   While other statutes and regulations may apply, the CDC relies primarily upon the DHHS departmental grant regulations for its award and administration of grants.   These regulations are found in Title 45 of the Code of Federal Regulations, Subtitle A, Subchapter A, Part 75.   The CDC also relies upon the guidance materials in the HHS Grants Policy Statement and the Grants Policy Administration Manual.

9.    A grantee is responsible for safeguarding grant money through efficient and effective business practices. The grantee must follow all applicable authority and is responsible for administering the grant money in a manner consistent with the stated program objectives for which the grant was awarded, and in compliance with the terms of the award.

10.  As part of its terms of acceptance, each grantee must provide the Agency with an annual report regarding its expenses and fiscal health.   In addition, the grantee must submit a quarterly progress report to the program project officer.   The Agency reviews the grantee's reports to ensure that the grantee's operations comply with the terms of the grant, their budget, and all governing authority.

11.  A grantee may only use a grant award to pay for expenses authorized by the Agency for reasonable program purposes in furtherance of the grant purpose, and the Agency maintains intense oversight in its stewardship of federal money.

12.  The Agency may terminate the grant in whole or in part if the grantee fails to comply with the terms and conditions of the award, upon consent by the grantee and the Agency, or for cause (i.e. as fraudulent, wasteful, or abusive stewardship of the grant money).

13.  A grantee's grant award cannot be used to pay a False Claims Act judgment.

14.  A grantee's grant award cannot be used to pay any attorneys' fees or costs associated with defending or appealing False Claims Act litigation.

Exhibit 1 017

15.    A grantee's grant award cannot be used to pay any fees and costs associated with a bankruptcy, including attorneys' fees and costs, trustee's fees, filing fees, court fees, and administrative expenses.

16.    Property of any kind purchased with grant money is held in trust for the United States.    If a grantee purchases property with grant money and non-grant money, the grantee holds the property in trust on a pro rata basis and the grantee must show which funds it used to purchase the property. In general, the applicable regulations direct that a grantee may not sell, transfer, encumber, or otherwise dispose of property held in trust without prior approval by the Agency.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED: December 5, 2023.

Rhonda D. Latimer -S    Digitally signed by Rhonda D. Latimer -S
Date: 2023.12.05 15:13:06 -05'00'

RHONDA LATIMER
Atlanta, Georgia

Exhibit 1 018

Christy L. Brandon (Bar No. 4833)
Brandon Law Firm, PLLC
P.O. Box 1544
Bigfork, MT 59911
(406) 837-5445
christy@brandonlawfirm.com
      Subchapter V Trustee

Lynsey Ross (Bar No. 63788124)
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Ave. North, Ste 3200
Billings, MT 59101
(406) 247-4632
lynsey.ross@usdoj.gov
      Attorneys for United States of America

Richard J. Samson (ID #1904)
Christian, Samson & Baskett, PLLC
Attorneys at Law
310 W. Spruce
Missoula, MT 59802
(406) 721-7772
rjs@CSBlawoffice.com
      Attorneys for BNSF Railway Company

James A. Patten (ID #1191)
Patten, Peterman, Bekkedahl & Green, PLLC
2817 2nd Avenue North, Ste. 300
P.O. Box 1239
Billings, MT 59103-1239
(406) 252-8500
apatten@ppbglaw.com
      Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re | |
| **CENTER FOR ASBESTOS RELATED DISEASE, INC.,** | Case No. **9:23-bk-90135-BPH** |
| Debtor. | |

## STIPULATION

Exhibit 2 001

In this Chapter 11 subchapter V bankruptcy, the Debtor filed its "Plan of Reorganization for Small Business Under Chapter 11" on November 6, 2023 at ECF 43 (the "Plan") and the Court by Order filed November 8, 2023, at ECF 51 set a hearing on confirmation of the Plan for January 11, 2023. Objections to confirmation of the Plan were filed by BNSF Railway Company ("BNSF") and the Department of Health and Human Services Center ("DHHS") and joined by the United States Department of Justice. DHHS filed a Motion to Dismiss on December 5, 2023, at ECF 65.

Prior to this bankruptcy case filing, on July 18, 2023, the U.S. District Court entered an amended judgment under the False Claims Act in favor of the United States and against the Debtor in BNSF Railway Company, on behalf of the United States of America vs. Center for Asbestos Related Disease, Inc. in the United States District Court for the District of Montana, Missoula Division, under CV 19-40-M-DLC ("FCA Judgment"). Debtor appealed the FAC Judgment on July 20, 2023.

The parties stipulate and agree as follows:

1.    In its Motion to Dismiss, DHHS alleged that all, or substantially all, of the Debtor's income and real and personal property is held in trust for the benefit of the United States to the extent it was purchased and maintained with federal grant money. The Debtor has a small amount of non-grant income which was commingled with grant income including a post-petition transfer into a debtor-in-possession bank account. This Stipulation for Dismissal is made with the intention of establishing as a fact that the bases for the DHHS Motion to Dismiss is accepted by the parties hereto.

2.    Bankruptcy case to be dismissed pursuant to the terms of this Stipulation.

2

Exhibit 2 002

3.     Dismissal of this bankruptcy case has no preclusive effect on nondischargeability of the FCA Judgment in any future bankruptcy case.

4.     Administrative and professional fees and costs related to the bankruptcy are not allowable uses of federal grant money and are subject to disallowance by the granting agency. The Debtor acknowledges that it is subject to the reporting and use requirements of the grant and related agency administrative procedures.  All allowable bankruptcy-related fees and costs shall be paid solely from the Debtor's non-grant income.

5.     Any payment of post-petition professional fees will be subject to approval by the Bankruptcy Court pursuant to LBR 2016-1.

6.     Federal grant money and property held in trust for the benefit of the United States cannot be used to pay the FCA Judgment and/or related costs and expenses, including attorney fees and costs. The authorized uses of federal grant money are governed principally by: the DHHS grants regulations, at 45 C.F.R. Subtitle A, Subchapter A, Part 75 (Uniform Administrative Requirements, Cost Principles, and Audit Requirements); the DHHS Grants Policy Statement; the DHHS Grants Policy Administration Manual; the rulings of the DHHS Departmental Appeals Board; Notices of Funding Opportunity; Notices of Award; Debtor's grant applications; Debtor's approved budgets; and DHHS authorizations of Debtor's expenses.

7.     Following dismissal, the Debtor can pay any creditors with  Non-Priority General Unsecured Claims from grant funds to the extent the claims are for authorized expenses under the terms of the grant and under the applicable DHHS grant regulations and guidance materials.

8.     This Stipulation is subject to bankruptcy court approval on CARD's motion.


WHEREFORE, the parties request the Court enter its Order approving this Stipulation

Exhibit 2 003

and its terms.

DATED March 13, 2024        /s/ Tracy McNew
                                          Tracy McNew, Director
                                          Center for Asbestos Related Disease, Inc., Debtor

DATED March 13, 2024        /s/ James A. Patten
                                            Attorney for Debtor

DATED March 13, 2024        /s/ Greg Bongiovanni
                                          Greg Bongiovanni, Agency Counsel
                                          Office of the General Counsel
                                          United States Department of Health & Human Services

DATED March 14, 2024        /s/ Lynsey Ross
                                            Attorney for United States Department of Health and Human Services

DATED March 14, 2024        /s/ Lynsey Ross
                                            Attorney for United States Department of Justice

DATED March 15, 2024        /s/ Chad M. Knight
                                            Chad M. Knight
                                          Its: Authorized Representative/Legal Counsel
                                          BNSF Railway Company

DATED March 14, 2024        /s/ Richard J. Samson
                                            Attorney for BNSF Railway Company

DATED March 14, 2024        /s/ Christy L. Brandon
                                            Subchapter V Trustee

4

Exhibit 2 004

James A. Patten (ID# 1191)
Molly S. Considine (ID #13800)
**PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC**
2817 Second Ave. North, Suite 300
P.O. Box 1239
Billings, MT  59103-1239
Telephone (406) 252-8500
Facsimile: (406) 294-9500
Email: apatten@ppbglaw.com
           mconsidine@ppbglaw.com

Attorneys for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE:<br><br>CENTER FOR ASBESTOS RELATED DISEASE, INC.,<br><br>Debtor. | Case No. 9:23-bk-90135-BPH<br><br>**MOTION FOR APPROVAL OF STIPULATION** |

CENTER FOR ASBESTOS RELATED DISEASE, INC., Debtor and Debtor-in-

Possession ("CARD") moves this Court to approve the Stipulation made by and between CARD,

the Subchapter V Trustee, Christy Brandon, the United States of America, and the BNSF

Railway Company (ECF No. 85). The Stipulation is the agreement among the stipulating parties

for the dismissal of this Subchapter V case upon the grounds advanced by the United States of

America in its Motion to Dismiss Bankruptcy for Cause (ECF No. 65).

1

Exhibit 3 001

Dated this 19th day of March, 2024.

PATTEN, PETERMAN, BEKKEDAHL
& GREEN PLLC
2817 2nd Avenue North, Ste. 300
P.O. Box 1239
Billings, MT  59103-1239


By:/s/J A Patten _____
James A. Patten
Attorney for Debtor

NOTICE OF OPPORTUNITY TO RESPOND
AND REQUEST  A HEARING

If you object to the motion, you must file a written responsive pleading  and request a hearing within fourteen (14) days of the date of the motion. The responding party shall schedule the hearing on the motion at least twenty-one (21) days after the date of the response and request for hearing and shall include in the caption of the responsive pleading in bold and conspicuous print the date, time and location of the hearing by inserting in the caption the following:

**NOTICE OF HEARING**
**Date: _____**
**Time:_____**
**Location:_____**

If no objections are timely filed, the Court may grant the relief requested as a failure to respond by any entity shall be deemed an admission that the relief requested should be granted.

DATED this 19th day of March, 2024.

PATTEN, PETERMAN, BEKKEDAHL
& GREEN, P.L.L.C.
2817 2nd Avenue North, Ste. 300
P.O. Box 1239
Billings, MT 59103-1239


By:/s/ *J A Patten* _____
James A. Patten
Attorney for Debtor

2

Exhibit 3 002

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify under penalty of perjury that on the 19th day of March, 2024 a copy of the foregoing was served by electronic means pursuant to LBR 9013-1(d)(2) on the parties noted in the Court's ECF transmission facilities and/or by mail on the following parties:

See attached mailing matrix
*The attached list will not be mailed
out to creditors but will be on
file with the United States
Bankruptcy Court.  A copy will
be provided upon request

/s/JA Patten
Patten, Peterman, Bekkedahl & Green PLLC

3

Exhibit 3 003

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**CENTER FOR ASBESTOS
RELATED DISEASE, INC.,**                    Case No. **9:23-bk-90135-BPH**

           Debtor.

# ORDER

      In this subchapter V bankruptcy, Debtor filed a "Motion for Approval of Stipulation" on March 19, 2024, at ECF No. 88 ("Motion"). The Motion seeks an Order approving the "Stipulation for Dismissal" filed on March 15, 2024, at ECF No. 85 ("Stipulation"), reflecting an agreement among Debtor, the Subchapter V Trustee, the United States Department of Health & Human Services ("DHHS"), the Department of Justice, and BNSF Railway Company. Under the terms of the Stipulation, Debtor consents to the dismissal of its bankruptcy case.

      Pursuant to Mont. LBR 9013-1, a "Notice" attached to the Motion explains that the time to respond or object to the Motion and schedule the matter for a hearing is fourteen (14) days. The time to respond or object has passed. No objections were filed.

      IT IS ORDERED that the Motion is granted.

      IT IS FURTHER ORDERED the parties shall be bound by and perform according to the terms and conditions of the Stipulation, including the dismissal of Debtor's case.

      Dated April 8, 2024.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana

1

Exhibit 4 001