Mark Steger Smith
Lynsey Ross
Assistant U.S. Attorneys
U.S. Attorney's Office
2601 2nd Ave. North, Suite 3200
Billings MT 59101
(406) 247-4667 – Mark
(406) 247-4632 – Lynsey
mark.smith3@usdoj.gov
lynsey.ross@usdoj.gov

*Attorneys for the United States of America*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BNSF RAILWAY COMPANY, on behalf of THE UNITED STATES OF AMERICA, <br><br> Plaintiff/Judgment Creditor, <br><br> vs. <br><br> THE CENTER FOR ASBESTOS RELATED DISEASE, INC., <br><br> Defendant/Judgment Debtor. | Case No.: 9:25-cv-67-DLC <br><br><br> **UNITED STATES' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** |

**INTRODUCTION**

BNSF's Response Brief opposing the United States' Motion to Dismiss

(Doc. 49) delves into many topics, but fails to engage on the central question: What

statute or other authority enables judicial review of BNSF's collection efforts

against a federal agency and provides an unequivocal waiver of sovereign

1

immunity?  BNSF still identifies no such authority, and no applicable waiver of sovereign immunity.  BNSF attempts to treat the United States as the judgment debtor in its attempts to execute against DHHS's property to satisfy CARD's debt. In doing so, BNSF continues to misunderstand this key fact: CARD alone owes the judgment to the United States and BNSF, the United States <u>does not</u> owe a debt to BNSF.

Accordingly, neither the qui tam action, in which the United States was in the position of a plaintiff rather than a defendant, nor the removal, which cannot provide jurisdiction the state court did not have originally, provide the requisite jurisdiction and waiver of sovereign immunity.

**ARGUMENT**

1. **BNSF's state court collection efforts against federal funds are a separate action from prior litigation.**

BNSF's collection efforts here – including the state court Writ of Execution – are distinct from the federal qui tam action.  The Writ itself was issued under state law by a different court, under a different cause number, utilizing the authority of a different sovereign.  This Court issued the judgment in the qui tam, but collection of that judgment "shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought…." *Paul Revere Ins. Group v. United States*, 500 F.3d 957, 960 (9th Cir. 2007) (quoting Fed. R. Civ. P. 69(a)).

Moreover, the Writ of Execution bore a critical distinction from the qui tam / FCA case, in that it – for the first time – sought to satisfy the judgment using federal grant money.  Doc. 1 at 2 ("BNSF seeks to restrain or possess federal funds and property…").  This put the federal government in the position of needing to defend federal funds against collection by BNSF, which was the entire premise and basis for removal to this Court.  *Id*.  An action against federal funds requires an applicable waiver of sovereign immunity.

BNSF cites generally to *United States v. Cless*, 254 F.2d 590 (3d Cir. 1958), *superseded as recognized in United States v. Del Valle & Del Valle, Inc.*, 532 F.Supp. 337, 338 (D.P.R. 1981), for the proposition that a Writ of Execution cannot be a complaint or a pleading creating an action.  Doc. 49 at 4.  *Cless* states nothing to this effect. *Cless* deals entirely with an outdated statute[1] regarding joinder of the United States in a state lawsuit and state court jurisdiction. *Id.* at 592.  Moreover, even by its own terms, *Cless* does not apply where, as here, the United States was an indispensable party.  *Cless*, 254 F.2d at 592. The superseding of the statute at

---

[1]  The *Cless* decision was based on the statutory wording of 28 U.S.C. § 2410, which has been amended seven times since this 1958 decision to its current iteration.  *See Del Valle*, 532 F. Supp. at 338 (explaining that, pursuant to the Federal Tax Lien Act, "Section 2410 of Title 28 of the United States Code must now be read in conjunction with the new provision of the Internal Revenue Code and the cases [including *Cless*] are no longer controlling").

3

issue, plus its discussion of a completely unrelated and outdated area of law, renders *Cless* inapposite.

BNSF also cites *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) for the same contention (a Writ of Execution cannot be a separate claim), but the case is similarly inapposite and actually unhelpful to BNSF's position. *Peacock* involved an ERISA claim (Employee Retirement Income Security Act) by a former employee against an officer of his former private sector employer. *Id*. at 351. The case did not involve the federal government or sovereign immunity and, again, the case does not establish that efforts to collect on a judgment cannot be distinct causes of action: To the contrary, the court in *Peacock* denied the former employee's claim because his collection efforts were not truly "ancillary" to his ERISA action. *Id*. at 355-56 (finding insufficient factual dependence to justify ancillary jurisdiction because asserted facts were independent of the ERISA suit).

In *Peacock*, the relevant facts were limited to assets after entry of judgment and the claims had "little or no factual or logical interdependence" to the ERISA suit. *Id.* at 356. The same is true here: facts and claims alleged to obtain the FCA judgment (false claims submitted by CARD to the government) are independent and distinct from the facts and claims alleged here (execution against federal property interests to satisfy a judgment owed to the United States).

This result was reached because "[i]n a subsequent lawsuit involving claims *with no independent basis for jurisdiction*, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction." *Id.* (emphasis added). This holding maps perfectly onto the United States' motion to dismiss: BNSF's subsequent collection efforts against federal funds lack any independent basis for jurisdiction over the government, so the Court must dismiss those claims.

**2. Judicial estoppel does not apply and cannot trump lack of jurisdiction.**

BNSF contends that, because the United States argued this Court had jurisdiction under 28 U.S.C. § 1331 (federal question) for purposes of removal, it is thereafter estopped from "taking the conflicting position that this Court lacks jurisdiction." Doc. 49 at 6-7. Yet, in truth, there is no conflict.

As explained in the opening brief, the sole prerequisite for "federal officer" removal under 28 U.S.C. § 1442 is that a claim be brought against a federal officer or agency. Doc. 45 at 6-7. That requirement is clearly satisfied here by BNSF's efforts to collect against DHHS funds or assets. *Washington v. Udall*, 417 F.2d 1310, 1315 (9th Cir. 1969) (a judgment that would "expend itself on the public treasury or domain" is a suit against the United States).

On removal, a federal court's review of a state court judgment occurs under 28 U.S.C. § 1450, "which authorizes district courts to dissolve or modify state

court orders entered prior to removal." Doc. 45 at 10-11, citing *Aspic Eng'g & Constr. Co. v. ECC CENTCOM Constructors, LLC*, No. 17-CV-00224-YGR, 2017 WL 2289219, at *2 (N.D. Cal. May 25, 2017). This federal statute obviously presents a federal question under § 1331 for the limited purpose of the United States' motion to quash the writ—the sole reason for its removal.

Nevertheless, derivative jurisdiction under § 1442 also means this Court stands in the shoes of the Lincoln County court on removal, with the same limits on jurisdiction. Doc. 45 at 9-10 (citing *Arizona v. Manypenny*, 451 U.S. 232, 242 n. 17 (1981) and *Minnesota v. United States*, 305 U.S. 382, 389 (1939)). These factors, combined, mean this Court has the authority to review and quash the Writ, but otherwise lacks jurisdiction over DHHS.

There is no inconsistency in holding that the United States is "an indispensable party defendant" for purposes of removal, but that the federal court is "without jurisdiction upon its removal." *Minnesota*, 305 U.S. at 389. Both can be true. "The fact that the removal was effected on petition of the United States and the stipulation of its attorney in relation thereto are facts without legal significance." *Id.* Removal for the sole purpose of quashing the writ is not unique, and akin to other types of removal from state to federal court, such as removal to quash a state-court subpoena for failure to comply with Tuohy regulations.

In short, there has been no inconsistency in the United States' position on subject matter jurisdiction.  The Court possessed jurisdiction to review and quash the Writ to the extent it sought federal funds (§ 1450 / § 1331) but otherwise lacks jurisdiction over DHHS due to derivative jurisdiction (§ 1442).

Further, even if the United States had mistakenly represented that this Court possessed subject matter jurisdiction beyond "dissolving or modifying" the Writ as to DHHS (which it did not), judicial estoppel could not overcome the lack of jurisdiction.  *See Minnesota*, 305 U.S. at 295 ("Where jurisdiction has not been conferred by Congress, no officer of the United States has power to give to any court jurisdiction of a suit against the United States.").

The doctrine of judicial estoppel is an affirmative defense and does not apply to subject-matter jurisdiction.  *Ins. Corp. of Ireland, Ltd. v. Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1137 (9th Cir.2012); *Zyla v. Am. Red Cross Blood Servs.*, 2014 WL 3868235 at *7 (N.D.Cal. Aug. 6, 2014) (noting "judicial estoppel is an affirmative defense"). Subject matter jurisdiction, by contrast, refers to a tribunal's power to hear a case, and can never be forfeited or waived.  *Adkison v. Comm'r*, 592 F.3d 1050, 1055 (9th Cir. 2010).  Thus, judicial estoppel cannot overcome a lack of jurisdiction or – more precisely – cannot create the authority for judicial review where it is otherwise lacking.

BNSF's judicial estoppel arguments should be rejected whole hoc.

### 3. Supplemental jurisdiction cannot encompass seizure of federal funds or assets.

The factor that differentiates this case from every case BNSF cites (Doc. 49 at 10-13) is that the Writ of Execution BNSF secured from the Lincoln County court sequestered federal funds and assets, becoming an action against the United States. *See, generally,* Doc. 1 at paragraphs 1-5 (detailing seizure of federal funds and assets via the Writ of Execution). As noted above, this puts the United States in the position of needing to defend against the improper seizure of those funds. Such was not the case in *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 932 F.3d 126, 136-37 (3rd Cir. 2019), *Peacock*, 516 U.S. at 356 (see supra § 1) or *United States v. Alpharma*, 928 F. Supp. 2d 840, fn. 3 (D. M.D. 2013). The "United States as defendant" dynamic is precisely what triggers the special need for subject matter jurisdiction and an unequivocal waiver of sovereign immunity.

BNSF contends the Writ of Execution was merely the natural continuation of the FCA case against CARD – but that is simply irreconcilable with its bid to collect federal funds and assets: BNSF is trying to execute against federal property as if DHHS was the *judgment debtor*. But the United States was never a *defendant* in the original FCA proceedings, and the judgment deriving from those proceedings requires CARD and only CARD to pay the judgment *to the United States*. The judgment did not, and could not, specify payment of CARD's debt via

federal funds or assets, nor waive sovereign immunity to an action to collect funds from DHHS.  Thus, when the Writ of Execution caused the seizure of federal funds and assets, it went well beyond the usual SOP for domesticating a federal judgment in a Montana state court.

As noted in the opening brief (Doc. 45 at 12-13), there can be no ancillary or supplemental jurisdiction for this Court to adjudicate BNSF's claims / collection efforts against federal funds or assets.  This is the inevitable result regardless of whether the Writ of Execution is denominated as a new "claim" or a "complaint" or simply as a seizure order.  The crucial fact is this Court did not and could not adjudicate a claim against federal funds as part of BNSF's original claim against CARD – therefore "supplemental jurisdiction" cannot expand the Court's authority after the fact to encompass such a claim or to sanction such a seizure.  *Id*.

### 4.  BNSF lacks any basis to dispute federal ownership.

BNSF argues the United States "owns none of the property at issue here" because all such property is "held in the name of the CARD Clinic."  Doc, 49 at 13, citing *Cless*, 254 F.2d at 592 and the June 12, 2025 Hearing Transcript at 16:1-24.  Yet, as previously discussed, *Cless* does not apply even if it had not been superseded.

Moreover, the cited portion of the transcript does not reflect any repudiation of federal ownership:

THE COURT: Okay. Who owns all of these fixtures that are in the building; the art, the machinery? Who owns it in a legal sense?

MS. ROSS: It was purchased with grant money. The United States does.

This is consistent with the United States' position from the outset: "On May 9, 2025, the United States filed its Motion to Quash Writ of Execution because the United States holds an interest in all or substantially all of CARD's property." [2] Doc. 1 at 2. This is also consistent with the stipulation the parties entered in federal bankruptcy court ("Federal grant money and property held in trust for the benefit of the United States cannot be used to pay the FCA judgment and/or related costs and expenses, including attorney fees and costs." (Doc. 29 at 3)). It is also consistent with agreed upon and ordered Determination of Federal Interest whereby DHHS would identify the actual extent of federal ownership. Doc. 32 at 1-2. BNSF's efforts to repudiate federal ownership are revisionist history.

## CONCLUSION

Limited jurisdiction upon removal cannot broadly extend jurisdiction to any claim BNSF wants to make against the government. The core issue is simple: CARD is a judgment debtor; BNSF wants to exercise state-court remedies to collect as a judgment creditor; the United States is not obligated on CARD's debt

---

[2] Subsequent to the motion to quash, DHHS had time to conduct a full assessment and determined it has a federal interest in the property identified in its Determination at Doc. 34-4.

and therefore DHHS's property is unavailable.  BNSF, as the party seeking relief *against United States property*, must (but has yet to) unequivocally provide the Court with a waiver of sovereign immunity and a claim *against the United States* under the Court's jurisdiction.  Without jurisdiction, the Court must dismiss the United States from this case.

DATED: December 19, 2025.

**KURT G. ALME**
United States Attorney

/s/  Mark S. Smith
    Lynsey Ross
    Mark S. Smith
    Assistant U.S. Attorneys
    Attorney for the United States

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points and contains 2,330 words, excluding the caption and certificates of service and compliance.

DATED: December 19, 2025.

**KURT G. ALME**
United States Attorney

/s/ Mark S. Smith
    Lynsey Ross
    Mark S. Smith
    Assistant U.S. Attorneys
    Attorney for the United States